[No. A042215. First Dist., Div. Three. Apr. 17, 1989.]

WENDELYN CAMPBELL, Plaintiff and Respondent, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, Defendant and Appellant.

COUNSEL

Nagle, Vale, McDowall, Cotter & Dunn and William D. McDowall for Defendant and Appellant.

Mark A. Kliszewski for Plaintiff and Respondent.

OPINION

BARRY-DEAL, Acting P. J.—State Farm Mutual Automobile Insurance Company appeals from a declaratory judgment rendered on April 5, 1988, by the court sitting without a jury. The question is whether 1984 amendments to Insurance Code section 11580.2[1] provided *underinsured* motorist coverage to respondent Wendelyn Campbell by operation of law, even though no such coverage was provided under the express terms of her policy. The trial court held that it did. We reverse.

*Facts*

We derive the facts from the agreed statement on which the case was tried.

On June 18, 1985, appellant issued an automobile insurance policy to respondent. It included an endorsement for uninsured motorist coverage. The application form executed by respondent indicated that *underinsured* motorist coverage was available to her as well, but she apparently did not choose to obtain it. In any case, the parties are agreed that as issued on June 18, respondent's policy did not expressly provide underinsured motorist coverage. On November 8, 1985, respondent was injured in a car accident. The other party was insured, but had insufficient coverage to indemnify respondent for her injuries. We presume that respondent filed a claim against appellant under the uninsured motorist coverage of her automobile policy and that appellant denied the claim, for respondent filed an action for a declaration that appellant must cover the deficit created by the other motorist's inadequate coverage. Appellant denied the allegations of the complaint, and the trial court found for respondent.

---

[1] All further statutory references are to the Insurance Code unless otherwise indicated.

*Legislative History*

In 1984, the Legislature amended section 11580.2[2] to "expand the definition of uninsured motor vehicle to include underinsured motor vehicles" and to require that "underinsured motorist coverage . . . be offered with limits at least equal to the limits of liability for the insured's uninsured motorist limits." (Legis. Counsel's Dig., Assem. Bill No. 3984 (1983-1984 Reg. Sess.).) The relevant portions of the amendments redefined the term "uninsured" motorist to include "underinsured" motorist (§ 11580.2, subds. (a)(2) and (b)), directed that uninsured and underinsured motorist coverage be offered as a "single coverage" (§ 11580.2, subd. (n)), and specified the definitions and procedures which would apply to underinsured motorist claims in particular (§ 11580.2, subd. (p)). The amending legislation was effective January 1, 1985 (Gov. Code, § 9600, subd. (a)), but the Legislature delayed the effective date of the mandatory underinsured motorist coverage provision until July 1, 1985 (§ 11580.2, subd. (p)(7)). The limitation on the effective date provided that "[u]nderinsured motorist coverage shall be included in all policies of bodily injury liability insurance providing uninsured motorist coverage *issued or renewed* on or after July 1, 1985. . . ." (§ 11580.2, subd. (p)(7), italics added.) Respondent's policy was issued before July 1, 1985, and was not to be renewed until December 1985.

*Discussion*

■ The sole question for review is whether respondent acquired underinsured motorist coverage by operation of law upon the effective date of the 1984 amendments to section 11580.2, despite the nonexistence of such coverage under the express terms of the policy issued by appellant before that date. It is a legal issue, which we review anew for legal error. (*Estate of Madison* (1945) 26 Cal.2d 453, 456-457 [159 P.2d 630].)

■ Public policy favors compensation for innocent casualties of the ever more dangerous enterprise of negotiating our highways, and instructs us to construe the uninsured motorist statute in favor of coverage wherever possible. (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 153-154 [23 Cal.Rptr. 592, 373 P.2d 640]; *Borders* v. *Great Falls Yosemite Ins. Co.* (1977) 72 Cal.App.3d 86, 96-97 [140 Cal.Rptr. 33].) Any doubtful language in the statute should therefore be resolved in favor of respondent. But if "the [uninsured motorist] section is clear in the context of the factual situation involved, the principle of liberal interpretation may not be applied to give a forced construction or one which inserts a requirement not con-

---

[2]Statutes 1984, chapter 1493, section 2, page 5255.

tained in the section. [Citations.]" (*Borders, supra,* at p. 98.) With these principles in mind, we turn to the statute.

■ As noted above, subdivision (p)(7) of section 11580.2 requires uninsured motorist coverage to include underinsured motorist coverage in any policy "issued or renewed" after July 1, 1985. On its face, this affects two classes of policy. First, if an insurer issued a policy on or after July 1, 1985, such policy will be read to include underinsured motorist coverage in an amount at least equal to the uninsured motorist coverage of that policy.[3] (§ 11580.2, subd. (p); cf. *Menchaca* v. *Farmers Insurance Exchange* (1976) 59 Cal.App.3d 117, 125-126 [130 Cal.Rptr. 607] [uninsured motorist provisions to be read into every insurance policy to which they apply].) Second, when an insurer renews an existing policy on or after July 1, the renewed policy will be read to include underinsured motorist coverage in the same manner. (Cf. *Eliopulos* v. *North River Ins. Co.* (1963) 219 Cal.App.2d 845, 850-851 [33 Cal.Rptr. 449] [insured benefited from mandatory coverage where policy "issued" after effective date of statute].)

■ The parties agreed below that for the purpose of determining coverage under the amended version of section 11580.2, respondent's policy was issued on June 18, 1985, and was not renewed until December 1985. We therefore conclude that under the plain language of section 11580.2, her policy was not subject to that legislation's mandatory underinsured motorist coverage until its renewal date in December 1985.

The construction urged upon us by respondent and apparently adopted by the trial court would require us to find that *every* policy in effect as of July 1, 1985, should be read to include the additional underinsured motorist coverage, regardless of its issue or renewal status. To arrive at that interpretation, we must add to the subdivision a class of policies not mentioned, i.e., all those in effect on July 1, 1985, and ignore the restriction to those policies issued or renewed after that date. We presume the Legislature meant what it said. (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].) To find in respondent's favor, we would have to interpret away clear language in favor of an ambiguity that does not exist. We decline to do so.

Our conclusion is not affected by those portions of section 11580.2 that redefine the term "uninsured" motorist to include "underinsured" motorist.

---

[3] We note that prior to the effective date of the statute, underinsured motorist coverage was to some extent deemed included in uninsured motorist coverage. Where a person responsible for an accident was insured in an amount less than the minimum required by California law, that person was treated as though uninsured for the purposes of the uninsured motorist statute. (See, e.g., *Kirkley* v. *State Farm Mut. Ins. Co.* (1971) 17 Cal. App.3d 1078, 1080-1081 [95 Cal.Rptr. 427].) To that extent, the revisions of section 11580.2 restated existing law.

(See, e.g., § 11580.2, subd. (b).) Respondent contends that because these portions of section 11580.2 were effective on January 1, 1985, they must be read as binding the insurer on the date the policy was issued, June 18, 1985. Respondent ignores the Legislature's specific command that subdivision (p) is to control wherever it may be in conflict with other provisions of the section. (§ 11580.2, subd. (p), 1st par.) We therefore reject respondent's arguments that it was illegal to issue the policy without underinsured motorist coverage, that we should interpret subdivision (p) in light of the whole section, and that "the Legislature intended it as a supplement to the other subdivisions in question."

For the same reason, we reject respondent's argument that appellant is estopped from denying coverage because it violated the requirement that underinsured and uninsured motorist coverage be offered as a single coverage. (§ 11580.2, subd. (n).) Pursuant to subdivision (p), such coverage was not mandatory until July 1, 1985. Appellant offered underinsured motorist coverage to respondent, who apparently declined to purchase it. The effect of validating respondent's estoppel argument would be to advance the effective date of mandatory coverage to January 1, 1985, for it assumes that subdivision (n) required appellant to offer a single coverage which included underinsured motorist coverage. This interpretation of subdivision (n) brings it into conflict with subdivision (p)(7), which made such inclusion mandatory as of July 1, 1985, necessarily excluding an earlier effective date.

Respondent's reliance on *Chrisman* v. *Superior Court* (1987) 191 Cal.App.3d 1465 [236 Cal.Rptr. 703] is misplaced. In holding that the mandatory arbitration provisions of section 11580.2, subdivision (f), applied to disputes over underinsured motorist coverage, *Chrisman* assumed the existence of voluntarily purchased underinsured motorist coverage, and did not address the question of the effective date of mandatory coverage. (*Chrisman, supra,* at pp. 1469-1470.) To the extent that *Chrisman* bears on this case, it supports our conclusion that the increased underinsured motorist coverage was not mandatory until July 1, 1985. (*Ibid.* [assuming that coverage mandatory on July 1, 1985].) We therefore reject respondent's argument that *Chrisman* held that underinsured motorist coverage was added to all policies containing uninsured motorist coverage on the effective date of the 1984 amendments, i.e., January 1, 1985.

Based on the clear restriction imposed by section 11580.2, we hold that respondent did not acquire underinsured motorist coverage by operation of law on July 1, 1985.

The judgment is reversed with directions to enter a new judgment in favor of appellant.

Merrill, J., and Strankman, J., concurred.