880 F.2d 204
 Michael ELWOOD; Deborah Elwood, On behalf of themselves and
others similarly situated, Plaintiffs-Appellants,
v.
AID INSURANCE CO., aka: Allied Insurance Company and Does I
Through 50 Inclusive, Defendant-Appellee.
 No. 88-5628.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1988.
Memorandum Filed April 21, 1989.
Decided July 13, 1989.
 
 David D. Martin, Cohen & Martin, San Diego, Cal., for plaintiffs-appellants.
 Mark D. Wuerfel and Judith MacQuarrie, Kinder & Wuerfel, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before HALL, WIGGINS and THOMPSON, Circuit Judges.
 ORDER
 The Memorandum disposition filed on April 21, 1989 has been designated an opinion for publication by Judge Wiggins.
 OPINION
 WIGGINS, Circuit Judge:
 
 
 1
 Michael and Deborah Elwood appeal the district court's grant of summary judgment in favor of Allied Mutual Insurance Company (Allied). The district court concluded that the Elwoods were not entitled to benefits under the underinsured motorists coverage of their automobile insurance policy for injuries suffered in an automobile accident. We affirm.
 
 BACKGROUND
 
 2
 The parties have stipulated to the relevant facts. The Elwoods were injured when an automobile driven by Larry Whisman struck their car from behind while the Elwoods were waiting at a traffic light. The Elwoods filed a claim with Allied for medical expenses and for damages to their car. Allied made medical payments of $25,000 and $6,800 to Michael and Deborah respectively in satisfaction of its obligation under the medical payments provision of the policy. Coverage for medical payments was limited to $25,000 per person or $50,000 per accident. The Elwoods were also compensated for the damage to their car.
 
 
 3
 Whisman was insured under a policy with Farmers Insurance Company that also had $25,000/$50,000 bodily injury liability limits. The Elwoods settled with Mr. Whisman and Farmer's Insurance for $59,180. Michael Elwood received $25,000 from Farmer's Insurance, plus a $9,180 note from Mr. Whisman, for a total settlement of $34,180. Deborah Elwood received $25,000 from Farmer's Insurance.
 
 
 4
 The Elwoods then made a demand for underinsured motorist benefits under their policy with Allied, because the sum they recovered from Whisman and his carrier did not fully compensate them for their injuries.[1]
 
 
 5
 The provisions of the policy relating to underinsured motorists coverage are contained in the declaration sheet and in a two-page endorsement entitled "Underinsured Motorist Coverage." The pertinent portion of the declaration sheet merely indicates that the limit of underinsured motorists coverage is $25,000 per person and $50,000 per accident. The endorsement defines "underinsured motor vehicle" as "a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the limit of liability for this coverage." A section entitled "Limit of Liability" is contained on page two and states in relevant part:
 
 
 6
 The limit of liability shown in the Schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
 
 
 7
 1. Covered persons;
 
 
 8
 2. Claims made;
 
 
 9
 3. Vehicles or premiums shown in the Declarations; or
 
 
 10
 4. Vehicles involved in the accident.
 
 
 11
 However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.
 
 
 12
 The Elwoods' demand was based on their belief that their underinsured motorists coverage of $25,000/$50,000 would be payable to the extent the underinsured's policy failed to reimburse the full amount of damages suffered by them.
 
 
 13
 Allied interprets the policy differently. It maintains that read in its entirety, the policy clearly indicates that underinsured motorists benefits are payable based on the difference between the $25,000/$50,000 limit and the amount paid by the underinsured.
 
 
 14
 Notwithstanding this fundamental disagreement over the extent of the underinsured motorist coverage, Allied denied the Elwoods' claim on the basis that Whisman's automobile was not an "underinsured motor vehicle" as defined in the endorsement because Whisman's $25,000/$50,000 bodily injury liability policy limits are equal to, rather than less than, the Elwoods' policy's $25,000/$50,000 underinsured motorist limits.
 
 
 15
 The Elwoods brought suit in state court alleging breach of contract, tortious breach of contract, fraud, and breach of statutory duty. Allied removed the case to federal court, the parties stipulated to dismissal of all claims except the claim for breach of contract, and the parties filed cross-motions for summary judgment. The court granted Allied's motion and denied the Elwoods' motion, concluding that the policy was not ambiguous and that construed in its entirety the policy precluded the Elwoods from collecting underinsured motorists benefits. This timely appeal followed, and we have jurisdiction under 28 U.S.C. Sec. 1291 (1982).
 
 STANDARD OF REVIEW
 
 16
 The Court reviews a grant of summary judgment de novo and affirms the judgment if there are no genuine issues of material fact and the district court correctly applied the substantive law. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986). Because the parties submitted this case on stipulated facts, the Court's review is limited to a de novo examination of questions of law. Flexi-Van Leasing, Inc. v. Aetna Casualty & Surety Co., 822 F.2d 854, 855 (9th Cir.1987); Jackson Water Works, Inc. v. Public Utilities Comm'n of Cal., 793 F.2d 1090, 1092 (9th Cir.1986), cert. denied, 479 U.S. 1102, 107 S.Ct. 1334, 94 L.Ed.2d 184 (1987). The district court's interpretation and application of state law is not entitled to special deference and is reviewed de novo. Id.; Matter of McLinn, 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).
 
 ANALYSIS
 I. Declaration Sheet
 
 17
 Initially, the Elwoods appear to contend that the $25,000/$50,000 limit for underinsured motorist coverage described on the declaration sheet should be interpreted literally. As discussed above, they believed the $25,000/$50,000 coverage meant that they could recover up to that amount to the extent the underinsured failed to reimburse the total damages suffered by them.
 
 
 18
 Each provision of an insurance contract must be considered with reference to every other clause on which it has a bearing. Jarrett v. Allstate Ins. Co., 209 Cal.App.2d 804, 809, 26 Cal.Rptr. 231, 234 (1962). The $25,000/$50,000 underinsured motorists coverage provision contained in the declaration sheet must be read in conjunction with the exclusions and limits of liability reflected in the endorsement. These provisions unambiguously show that the underinsurance coverage is reduced by bodily injury liability payments, rather than serving as excess insurance.[2]
 
 II. Ambiguity; Applicability of Coverage
 
 19
 The Elwoods' main contention on appeal is that the policy is ambiguous and that their reasonable expectation of the coverage of the policy should govern. The Elwoods maintain that the policy is ambiguous because there is a conflict in the policy regarding the maximum amount payable. The Elwoods contend that the indication on the declaration sheet that the underinsured motorist coverage is $25,000/$50,000 and the statement in the Limit of Liability section that the amount stated on the declaration sheet is the most Allied will pay, conflicts with the provision in the Limit of Liability section that "the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." The Elwoods argue that under this latter provision the maximum coverage is actually $10,000 because underinsurance coverage is not triggered until the tortfeasor's coverage reaches the minimum amount of insurance required in California, $15,000/$30,000,[3] and the $15,000 will always be deducted from the $25,000. Because there is a conflict in the policy concerning the maximum amount payable, they contend the policy is ambiguous and that their reasonable expectations of the maximum amount payable should govern.
 
 
 20
 Allied contends that the alleged ambiguity concerning the amount of benefits payable is irrelevant because the underinsured motorist coverage was never even triggered. According to Allied, the underinsured motorist coverage was never triggered because the Elwoods' car was not struck by an "underinsured motor vehicle" as defined under the policy. Allied contends that this case involves a controversy over whether any benefits are payable, not how much. Allied also rejects the notion that the policy provisions are conflicting or ambiguous, and contends that the Elwoods' reasonable expectations are irrelevant. We agree with both of Allied's arguments.
 
 A. Applicability of Coverage
 
 21
 The Elwoods' ambiguity argument is irrelevant because the underinsured motor coverage was never triggered. Whisman's policy limits were equal to rather than less than the Elwoods' policy's underinsured motorist limits. The Elwoods, however, contend that Allied may not rely on the definition of an underinsured motor vehicle to deny coverage because the definition was actually an exclusion that was not conspicuous, plain, and clear. Even if the definition is properly characterized as an exclusion, the Elwoods' argument must be rejected.
 
 
 22
 An exclusionary clause must pass muster under two independent tests: "(1) The exclusion must be conspicuous and (2) the language of the exclusion must be plain and clear." Ponder v. Blue Cross of S. Cal., 145 Cal.App.3d 709, 719, 193 Cal.Rptr. 632, 637 (1983) (emphasis in original) (footnote omitted). The conspicuous test requires that the exclusion "be positioned in a place and printed in a form which would attract a reader's attention." Id. The second test requires that "the substance of the exclusion must be stated in words that convey the proper meaning to persons expected to read the contract." Id.
 
 
 23
 In Ponder, the court found a "temporomandibular joint syndrome" exclusion inconspicuous because it was "hidden" under a subheading entitled "Dental Care Services," and it appeared in a densely packed page in ordinary type in a policy that contained other limitations and conditions in bold-face print or capitals. Id. at 721-23, 193 Cal.Rptr. at 639-40. The court found the use of the term "temporomandibular joint syndrome" not plain and clear because it was a medical term that most laypersons would not understand. Id. at 723-26, 193 Cal.Rptr. at 640-42.
 
 
 24
 The district court in this case concluded that the definition of an underinsured motorist was not inconspicuous and did not lack clarity under the Ponder analysis.
 
 
 25
 Within the text of the endorsement itself, the relevant language is not inconspicuous vis-a-vis other provisions. It is in the same size and style of type and it is positioned on a discrete one-sentence paragraph set apart by blank lines on either side. Moreover, the paragraph begins with the phrase "Underinsured Motor Vehicle," in quotes, alerting the reader that this particular paragraph is designed to define the type of vehicle covered. It then goes on to specifically define "Covered Vehicle" as those with bodily injury liability coverage which is less than the limits of this coverage. The terms of this definition are not complicated medical terms as was present in Ponder. They are also are [sic] not in complicated legal terms. Rather, the language used in this paragraph consists of everyday ordinary English words strung together with some precision and I hold comprehensible to laypersons, albeit with some amount of concentration.
 
 
 26
 We agree. See generally Northern Assurance Co. of Am. v. Carr, 860 F.2d 934, 936 (9th Cir.1988).
 
 
 27
 The Elwoods rely on Schmidt v. Pacific Mutual Life Ins. Co., 268 Cal.App.2d 735, 74 Cal.Rptr. 367 (1969), for the proposition that the alleged exclusion was not conspicuous because it was not contained in the exclusionary section. The policy in Schmidt, however, is distinguishable from the Elwood's policy. In Schmidt, the exclusionary clause in question was contained in the middle of a sentence describing benefits to be paid. Id. at 739-40, 74 Cal.Rptr. at 370. The alleged exclusionary clause in the Elwoods' policy, on the other hand, stands alone and undisguised. Schmidt simply does not require, as the Elwoods contend, that all limiting provisions be contained in a section entitled "Exclusions" in order to be enforceable.[4]
 
 
 28
 We also reject Elwoods' contention that the alleged exclusion is inconspicuous because it is printed in 20-point type. Although the remainder of the policy may be printed in larger type, the entire two page endorsement, including the definition of an underinsured motor vehicle, is printed in 20-point type. The 20-point type is not difficult to read, and the fact that the whole endorsement is done in the same type does not make the definition of an underinsured motor vehicle or any other provision either more or less conspicuous.
 
 
 29
 Finally, the Elwoods argue that the definition of an underinsured motor vehicle is unclear. First, they contend that it is difficult to determine whether the second "limit" refers to the liability limit on the underinsured motorist or the insured under Allied's policy. Upon reading the entire definition, however, it is clear that the second "limit" in the definition refers to the insured under Allied's policy.
 
 
 30
 They also allege the definition is unclear because the significance of the tortfeasor's liability limits is unclear. The Elwoods claim that in order for the definition to make sense, it should be preceded by a statement that Allied's maximum liability will not exceed the difference between the insured's underinsured motorist coverage limits, less the amount paid to the insured by the tortfeasor.
 
 
 31
 The definition is preceded, however, by just such a statement. At the top of the same page, the Limit of Liability section clearly states that the insured's maximum coverage is the difference between the amount stated on the declaration sheet less, among other deductions, the amount paid by a tortfeasor. The fact that the provisions discussing the deduction of the amounts paid by the tortfeasor from Allied's maximum liability is not grafted onto the preliminary definition of an underinsured motor vehicle does not render the definition unclear. Thus, the policy's definition of an underinsured motor vehicle, even if construed as an exclusionary clause, is enforceable. Because Whisman's automobile does not fit the definition of an underinsured motor vehicle, the Elwoods are not entitled to collect any benefits under the policy's underinsured motorist's coverage.
 
 B. Ambiguity
 
 32
 Even if Whisman's automobile did satisfy the definition of an underinsured motor vehicle, however, the Elwoods still would not be able to collect any benefits. The policy's provisions relative to the maximum amount payable are not conflicting and the Elwoods' expectations of the application of the underinsured motorists coverage are therefore irrelevant. An ambiguity results whenever "there is 'contradictory or necessarily inconsistent language in different portions of the instrument.' " Delgado v. Heritage Life Ins. Co., 157 Cal.App.3d 262, 271, 203 Cal.Rptr. 672, 677 (1984) (quoting 13 J. Appleman,Insurance Law & Practice Sec. 7386, at 161 (1976)). The deduction provision in the Limit of Liability section does not contradict the statement that the maximum limit of underinsured motorist coverage is $25,000/$50,000. As the example set forth by Allied on page 26 of its brief indicates, it is quite possible that the maximum underinsured motorists coverage may be payable. "[I]n an accident involving multiple parties in which the insured only receives $500 as his or her share of the underinsured motorists' minimum financial responsibility limits Allied will pay the insured $24,500 in underinsured motorists benefits." (Appellee's Brief at 26).
 
 
 33
 Because there is no conflict and thus no ambiguity in the terms of the policy, the Elwoods' rights rest on the contract as written, Barrett v. Farmers Ins. Group, 174 Cal.App.3d 747, 752, 220 Cal.Rptr. 135, 138 (1985), and the question of the Elwoods' reasonable expectation of coverage is inapplicable, Travelers Ins. Co. v. Lesher, 187 Cal.App.3d 169, 186, 231 Cal.Rptr. 791, 797 (1986).[5] As the district court properly concluded, effect must be given to the intention manifested by the policy to limit Allied's liability. Barrett, 174 Cal.App.3d at 752, 220 Cal.Rptr. at 138.
 
 CONCLUSION
 
 34
 We do not doubt that the Elwoods may not have realized when they purchased their policy from Allied that the amount recoverable under the underinsured motor coverage would be limited to the difference between their maximum coverage of $25,000/$50,000 and any payments made by a tortfeasor. Read in its entirety, however, Allied has unambiguously limited its liability to that amount. Because the contract is not ambiguous, the Elwoods' reasonable expectation of the policy is irrelevant. In any event, the underinsured motorist coverage was never triggered because Whisman's vehicle did not meet the definition of an "underinsured motor vehicle." The definition is enforceable because it is conspicuous, plain, and clear. Accordingly, the judgment of the district court is affirmed.
 
 
 35
 AFFIRMED.
 
 
 
 [1]
 The parties have stipulated that the total amount of uncompensated damages are $25,000 for Michael and $5,000 for Deborah
 
 
 [2]
 This type of coverage is consistent with Cal.Ins.Code Sec. 11580.2 (West 1988), which became effective January 1, 1985
 
 
 [3]
 Cal.Veh.Code Sec. 16430 (West 1971 & Supp.1988)
 
 
 [4]
 As Allied properly notes, the Elwoods' reliance on Aetna Casualty & Surety Company v. Velasco, 194 Cal.App.3d 1441, 240 Cal.Rptr. 290 (1987), must be rejected because in denying review, the California Supreme Court ordered that the opinion not be officially reported. Aetna, 240 Cal.Rptr. at 290 n. *. Under California Rules of Court Rule 977(a), the decision may not be cited or relied upon for any purpose
 
 
 [5]
 The Elwoods stipulated that Allied did not make any oral representations regarding underinsured motorists benefits. Their understanding of the benefits is derived solely from the written terms of the policy