[No. G009382. Fourth Dist., Div. Three. Apr. 30, 1991.]

DENNIS K. SCHWIETERMAN, Plaintiff and Appellant, v.
MERCURY CASUALTY COMPANY, Defendant and Respondent.

COUNSEL

Prendiville & Passante, Andrew J. Prendiville and Ira M. Pesserilo for Plaintiff and Appellant.

O'Connor & Schmeltzer and Lee P. O'Connor for Defendant and Respondent.

## OPINION

**SONENSHINE, Acting P. J.**—Dennis K. Schwieterman appeals a summary judgment entered against him in favor of Mercury Casualty Company. The court determined Schwieterman could not recover under his poli-

cy's underinsured motorist benefits because the limits on his "uninsured motorist benefits were the same as [the tortfeasor's] liability limits." We affirm.[1]

## I

After Schwieterman and several other individuals were injured in an automobile accident, they settled with the tortfeasor's insurance provider for the $30,000 policy limit of a "15/30 automobile liability policy."[2] Schwieterman, claiming his $10,000 settlement was inadequate, demanded underinsured benefits from Mercury, his insurance provider.[3] He maintains he is entitled to $5,000, i.e., the difference between the $15,000 underinsured limits and his $10,000 settlement.[4]

## II

Insurance Code section 11580.2, subdivision (p)(2), defines an underinsured motor vehicle as one being insured "for an amount that is *less than* the [victim's] uninsured motorist limits." (Italics added.) The court found Schwieterman was not entitled to these benefits because his underinsured limits were the same as the tortfeasor's liability limits.

 Schwieterman maintains the statute was intended to provide benefits to those who would otherwise be undercompensated. He contends public policy favors underinsured coverage when, due to multiple claimants, the tortfeasor's policy limits are insufficient.[5] We agree with his premise but not with his conclusion.

The Legislature recognized minimum liability limits would be inadequate to fully compensate severely injured accident victims. Consequently, the 1984 amendment to Insurance Code section 11580.2 requires insurance

---

[1] This is not a unanimous decision. Our dissenting colleague would like to rewrite history as well as the statute.

[2] A "15/30 policy" pays a maximum of $15,000 per individual, per accident, but is limited to $30,000 total benefits per accident.

[3] Mercury also insured the motorist responsible for the accident.

[4] Underinsured coverage benefits allow victims of automobile accidents to recover from their own insurance provider when tortfeasors have either insufficient insurance coverage or no coverage.

[5] Our dissenting colleague relies on *Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 270, footnote 7 [54 Cal.Rptr. 104, 419 P.2d 168], which states insurance provisions "must be construed so as to give the insured the protection which he reasonably had a right to expect." However, such interpretation applies to insurance *policies* and not to statutes. Statutory interpretation is confined to ascertaining the Legislature's intent.

Schwieterman concedes the policy and statutory language are the same. He does not argue the construction of the policy, but maintains the statute should be interpreted to provide coverage.

carriers to include underinsured benefits in all policies providing uninsured coverage.[6] This permits "individuals *to purchase* insurance for themselves in an amount they deem appropriate." (*Malone* v. *Nationwide Mutual Ins. Co.* (1989) 215 Cal.App.3d 275, 279 [263 Cal.Rptr. 499], italics added.)

Schwieterman took advantage of the new legislation but purchased only minimum underinsured coverage. Now he complains such coverage is insufficient to fully compensate him for his injuries. If we were to adopt his reasoning, he would receive benefits for which he did not pay.[7]

Schwieterman's position also ignores the statutory language which specifically *excludes* underinsured coverage when victims' underinsured limits are no greater than the tortfeasors' liability limits. He contends the language is unclear because it "neither expressly authorizes, nor expressly forbids" him from recovering under his own policy. He relies on *Campbell* v. *State Farm Mut. Auto. Ins. Co.* (1989) 209 Cal.App.3d 871 [257 Cal.Rptr. 542], which favors "compensation for innocent casualties . . . and instructs us to construe the uninsured motorist statute in favor of coverage . . . [when there is] [a]ny doubtful language in the statute." (*Id.* at p. 874.)

However, the statute is clear and the court will not "interpret away clear language in favor of an ambiguity that does not exist." (209 Cal.App.3d at p. 875.) Even the court in *Campbell* refused to create a statutory ambiguity. In that case, the plaintiff's policy provided uninsured coverage but not underinsured coverage. The statute expanded uninsured motorist coverage to include underinsured benefits, but only for policies *issued or renewed after* the statute's effective date. The court determined the statute clearly excluded plaintiff's underinsured claim and presumed the "Legislature meant what it said." (*Great Lakes Properties, Inc.* v. *El Segundo* (1977) 19 Cal.3d 152, 155 [137 Cal.Rptr. 154, 561 P.2d 244].)

Our decision is also consistent with *Elwood* v. *Aid Ins. Co.* (9th Cir. 1989) 880 F.2d 204, where coverage for underinsured benefits was similarly

[6] Subdivision (p)(7) of section 11580.2 requires uninsured motorist coverage to include underinsured motorist benefits in any policy issued or renewed after July 1, 1985.

[7] We note Schwieterman purchased underinsured coverage in amounts equal to the minimum liability limits required under California law. Therefore, if the tortfeasor is an insured motorist he could never receive underinsured benefits. Additionally, we agree Schwieterman would have been in a better position had the tortfeasor carried no insurance.

Our dissenting colleague contends this results in a fraud. However, the result is exactly as the Legislature intended. The Legislature wanted motorists, for their protection, to be able to purchase underinsured coverage in amounts *higher* than minimum liability limits.

The dissent's argument requires a rewriting of the statute. No matter how legitimate Schwieterman's points may be, we cannot do this. Schwieterman should direct his protests to the Legislature.

denied because the insured's underinsured limits were the same as the tortfeasor's liability limits. As with the present case, the tortfeasor would only be considered an underinsured motorist if his liability limits were *less than* the victim's underinsured limits. That court found the "underinsured motorist coverage was never triggered because [the tortfeasor's] vehicle did not meet the definition of 'an underinsured motor vehicle.' "[8] (*Id.* at p. 209.) It enforced the definition "because it is . . . plain, and clear." (*Ibid.*)

Judgment affirmed. Respondent to receive costs on appeal.

Moore, J., concurred.

**CROSBY, J.**—I dissent. The majority reads the definition of "underinsured motor vehicle" literally and, contrary to a cardinal tenet of statutory construction, reaches a palpably absurd result. The Legislature could not have intended the meaning my colleagues ascribe to Insurance Code section 11580.2, subdivision (p)(2) any more than Thomas Jefferson meant to exclude women from the words "all men are created equal" in the Declaration of Independence.[1]

The majority's result is also contrary to a cardinal tenet of insurance law: Insurance provisions are to be interpreted to give an insured the coverage he reasonably expects. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 270, fn. 7 [54 Cal.Rptr. 104, 419 P.2d 168].) Uninsured and underinsured motorist coverage is mandatory in this state unless an insured expressly waives it. (Ins. Code, § 11580.2, subds. (a)(1), (p)(7).) When Schwieterman purchased uninsured and underinsured motorist coverage with limits of $15,000/$30,000, he had a right to expect that if he sustained damages of $15,000 or more in an automobile accident and was not at fault, he would receive at least $15,000 in benefits, either from the tortfeasor's carrier or his own or a combination of the two.[2] Instead, he has been told that because he

---

[8] *Rudd* v. *California Casualty Gen. Ins. Co.* (1990) 219 Cal.App.3d 948 [268 Cal.Rptr. 624] is also instructive. The sole issue there was whether workers' compensation benefits could be offset against underinsured coverage. The court, however, did contemplate a scenario where a tortfeasor's liability limits would be equal to a victim's underinsured limits. It concluded the "[i]nsured would by definition have no claim against his underinsurance coverage." (*Id.* at p. 955.)

[1] I suppose a case could be made that our founding fathers thought so little of our founding mothers they did not intend to include them within the scope of the Great Declaration. Such a mean-spirited belief, however, like the lead opinion, is out of touch with the real world. It was obviously not the signers' intent to free the men from the rule of George III while the women remained loyal subjects of the king.

[2] Insurance Code section 11580.2, subdivision (p)(4) provides, "When bodily injury is caused by one or more motor vehicles, whether insured, underinsured, or uninsured, the maximum liability of the insurer providing the underinsured motorist coverage shall not

had only minimum coverage and the tortfeasor was insured, although not in an amount sufficient to satisfy the multiple claims involved, the legislatively mandated underinsured motorist coverage simply does not exist.

If permitted to stand, this result will perpetuate a statewide fraud of historical magnitude against low-end insureds.[3] Bluntly stated, under the majority's narrow definition of an underinsured motor vehicle, there can never be any recovery of underinsured motorist benefits for those individuals who buy policies with $15,000/$30,000 limits because no one who has insurance in California will be "insured for an amount that is less than [the injured insured's] uninsured motorist limits." (Ins. Code, § 11580.2, subd. (p)(2).) This means the statutorily required underinsured motorist coverage bought and paid for by the insured is entirely illusory.[4] I have examined Schwieterman's Mercury policy with care, and it contains no advisement to that effect.

Several facts bear emphasis here. First, Mercury does not dispute that Schwieterman has suffered more than $15,000 in damages. Second, Schwieterman only claims he is entitled to a total of $15,000: $10,000 from the tortfeasor's policy, with the balance from his own insurance. Third, my colleague's notation that Schwieterman is one of "several" individuals competing for benefits under the tortfeasor's $15,000/$30,000 policy is extremely misleading; in truth, Schwieterman is one of eleven claimants.

And therein lies the dilemma. Schwieterman poses the issue thusly: "If there has been a *de facto* reduction in the per person policy limits of a third

---

exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury."

[3] The fraud is actually much broader, of course, and potentially reaches a policy of *any* limit. Assume plaintiff and defendant each have $300,000 in liability, uninsured, and underinsured motorist coverage. Eleven people are seriously injured in the accident, and all demand defendant's policy. Plaintiff, according to the majority, may wind up with less than 10 percent of $300,000 despite his prudent acquisition of high limit underinsured motorist coverage. The Legislature could not have intended such a spurious result, nor could any insured ever expect it based on the language in the Mercury policies. People pay good money for this coverage. If it does not exist, the insurance industry owes many of us a healthy refund.

[4] I am unimpressed by any argument that Schwieterman's policy does not reflect a separate payment for underinsured motorist benefits. Per Insurance Code section 11580.2, subdivision (n), uninsured and underinsured coverages "shall be offered as a single coverage." The declarations page indicates a healthy chunk of Schwieterman's premium went for uninsured motorist coverage; by law, that meant he purchased underinsured motorist benefits as well.

Could underinsured motorist benefits apply in the case of an insured from a state or country that permits lower policy limits? Nope. The law is that defendants with coverage below this state's minimum are *uninsured* motorists for purposes of the Insurance Code. (See Cal. Uninsured Motorist Practice (Cont.Ed.Bar 1973) § 1.25; (Supp. Feb. 1991) § 1.25.) Thus, a California plaintiff with minimum uninsured motorist coverage but damages of at least $15,000 is guaranteed a $15,000 recovery. True, he is required to reimburse his own insurer for any benefits received from the out-of-state insurer, but he collects the full value of his own policy. (*Kirkley* v. *State Farm Mut. Ins. Co.* (1971) 17 Cal.App.3d 1078 [95 Cal.Rptr. 427].)

party, caused by a multiplicity of plaintiffs, can an injured party resort to his or her own underinsur[ed] motorist coverage?" The answer must be *yes*.

Somewhat curiously, Mercury espoused this very position in the trial court. There, the insurer conceded, "The purpose of underinsured motorist coverage is to provide the insured with *the same type of coverage* he would have if the insured was struck by an uninsured motorist." (Italics added.) Thus, Mercury has essentially admitted that Schwieterman is entitled to the aggregate sum of $15,000 in benefits, the precise amount he seeks.

Coincidentally, Schwieterman and the tortfeasor were each insured by Mercury; and both policies confirm my interpretation. The policy definition of "underinsured motor vehicle" substantially tracks the statutory definition in Insurance Code section 11580.2, subdivision (p)(2), but it expressly provides that an underinsured motor vehicle is an uninsured motor vehicle. A persuasive argument can be made that under the principles developed for uninsured motorist benefits, Schwieterman would be entitled to a combined recovery of $15,000 for that reason alone. (*Kirkley* v. *State Farm Mut. Ins. Co., supra*, 17 Cal.App.3d at p. 1082.)

Also, the "conditions" section of the policy applicable to underinsured motor vehicles provides, "This coverage does not apply to any bodily injury until the limits of the bodily injury liability policies applicable to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of such is submitted to the company." The policy then tracks the language of Insurance Code section 11580.2, subdivision (p)(4) (see fn. 2, *ante*), advising the insured that if the tortfeasor's car is "insured, underinsured, or uninsured, [Mercury's] maximum liability . . . shall not exceed the insured's underinsured motorist coverage limits, less the amount paid to the insured by [the tortfeasor]."

This seems to be a clear acknowledgement by Mercury that its insured reasonably expected to receive $15,000 for his injuries. Nevertheless, the majority claims the statutory language in subdivision (p)(2) ("insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person") refers solely to the face amount of a tortfeasor's policy and does not include those situations where coverage has been effectively reduced in order to settle multiple, competing claims. This crabbed interpretation defeats the public policy behind mandatory uninsured and underinsured motorist coverage and is simply illogical.

*Malone* v. *Nationwide Mutual Ins. Co.* (1989) 215 Cal.App.3d 275 [263 Cal.Rptr. 499] is instructive. There, the plaintiff was covered by a policy providing $500,000 in underinsured motorist benefits. The tortfeasor's

insurance coverage was less than that sum, but the plaintiff claimed to be entitled to the limits of her underinsured motorist coverage plus whatever she collected from the tortfeasor's carrier. We disagreed, concluding that where the tortfeasor's liability coverage is less than the injured party's underinsured motorist limits, those limits constituted the aggregated maximum the injured party could receive from both sources. Any other result would have been unfair to the carrier providing underinsured motorist benefits because "the underinsured motorist risk necessarily contemplates that the party responsible for the injury will have coverage of its own in some amount." (*Id.* at p. 279.)

Self-evident in that case, but not articulated, was the following: Given Malone's damages, the policy limits also constituted the *minimum* she could receive. Any other result would be unfair to the insured who bought underinsured motorist coverage contemplating that the combined contributions from a tortfeasor's carrier and her own would provide benefits in the amount purchased.[5]

The situation faced by Schwieterman is no different. He bought underinsured motorist coverage with limits of $15,000 per person or $30,000 per accident. He is apparently the only insured on his policy who was involved in the accident precipitating this lawsuit; consequently, he reasonably expects that, upon proof of damages, he will be entitled to the full $15,000. If he had been the only claimant against the tortfeasor's policy, the entire sum would have been paid from that source. If other claimants exhausted the tortfeasor's limits before Schwieterman even made a claim, presumably he could have looked to his uninsured motorist coverage. Either way, Schwieterman would receive $15,000.

Because he was one of numerous claimants who timely filed a claim, however, Mercury argues it should reap a windfall savings of $5,000. That

---

[5] The issue in *Malone* was whether an underinsured motorist carrier who paid the policy limits was entitled to reimbursement for all sums received by the insured from the tortfeasor. (See Ins. Code, § 11580.2, subd. (p)(2).) On that point we held, "underinsured motorist coverage is not the equivalent of full excess coverage. As the statutory scheme is designed, the underinsured motorist carrier gets a dollar-for-dollar credit for all payments by third party tortfeasors to the insureds, whether the insureds are made whole or not. In other words, a carrier providing underinsured motorist benefits never pays the full amount, only the difference between the policy limits and all contributions by all tortfeasors to all insureds." (*Malone* v. *Nationwide Mutual Ins. Co., supra,* 215 Cal.App.3d at p. 277.) We added, "[t]he analysis is no different if there is more than one tortfeasor *or more than one injured insured.*" (*Id.* at p. 279, italics added.) The last sentence, while correct and innocuous when the issue is an insurer's entitlement to reimbursement or credit, does create a potential for mischief in a case of this sort. In policies with single limits or the more traditional per person/per accident split, the number of injured individuals certainly does affect any one claimant's ability to receive satisfactory compensation for serious injuries. That is why an insured's expectation that he will receive a recovery equal to his uninsured or underinsured motorist limits must be honored. (See fn. 3, *ante.*)

result could not have been intended by the Legislature or anticipated by Schwieterman when he bought the policy. It can only be the product of an overly literal reading of statutory language.

*Elwood* v. *Aid Ins. Co.* (9th Cir. 1989) 880 F.2d 204, cited by the majority, does conclude with the line, "In any event, the underinsured motorist coverage was never triggered because [the tortfeasor's] vehicle did not meet the definition of an 'underinsured motor vehicle.' " (*Id.* at p. 209.) But there the insureds received the tortfeasor's $50,000 policy limits. Although that figure was also the limit of their underinsured motorist coverage, they sought to collect more because the $50,000 did not make them whole for their injuries. The Ninth Circuit rejected their claim, holding, as did this court in *Malone*, that uninsured coverage is not excess coverage. But the court also observed that its holding was consistent with the policy which "unambiguously" limited its liability to "the difference between their maximum coverage of $25,000/$50,000 and any payments made by a tortfeasor." (*Ibid.*)

In my view, the policy here is similarly unambiguous. Mercury sold Schwieterman uninsured and underinsured motorist coverage in the amount of $15,000 per person. The policy did not conspicuously alert the insured to the impossibility of ever collecting underinsured motorist benefits. Nor would that be expected; it would be absurd to sell such a policy and then delete it in the same document. There is only one sensible interpretation that satisfies an insured's reasonable expectation: The underinsured benefits fill any gap between the limits of the underinsured coverage and what the insured is able to collect from a tortfeasor, regardless of the latter's policy limits. I would reverse.