[No. F016134. Fifth Dist. Feb. 22, 1993.]

ROYAL INSURANCE COMPANY, Plaintiff and Respondent, v. AARON COLE, Defendant and Appellant.

COUNSEL

Hal F. Seibert for Defendant and Appellant.

Liggett & Quatraro and Peggy S. Liggett for Plaintiff and Respondent.

OPINION

HARRIS, J.—

### INTRODUCTION

Appellant Aaron Cole was a passenger in an automobile driven by Troy Franks, son of Charles and Barbara Franks, Royal Insurance Company's (Royal) insured. Royal interpled the $100,000 limits of the Franks liability policy because of the extent of injuries suffered by Cole and others. Cole filed a cross-complaint for declaratory relief against Royal seeking damages under the underinsurance provisions of the Franks policy. After a trial on Cole's cross-complaint, the trial court entered judgment for Royal.

### FACTS AND PROCEEDINGS BELOW

Troy Franks was involved in a two-vehicle collision when the automobile he was operating rear-ended a tractor-trailer owned by Stanley Houser and operated by Neil McDonald. Cole and Mitchell Madron were passengers in

the Franks vehicle. Royal's liability policy for the Franks vehicle was a single limit $100,000 policy.

As a result of injuries suffered, Cole filed a complaint against Franks, McDonald and Houser; Houser filed a complaint against Franks and McDonald; and Madron filed a complaint against Troy and Charles Franks, McDonald and Houser.

Based on the claims against Franks, on August 14, 1987, Royal filed its complaint in interpleader and on September 2, 1987, deposited the liability policy limits of $100,000 with the court. Thereafter, Cole answered the complaint and filed a cross-complaint for declaratory relief. In his declaratory relief action, Cole sought underinsurance motorist benefits equal to the difference between the actual amount that he received under the Franks liability policy and the $100,000 underinsured motorist benefits available to him under the underinsured motorist provisions of Franks's Royal policy and the California Insurance Code.

The issue of liability and damages went to arbitration on September 21, 1990. On September 24, 1990, Cole was awarded $125,000 as damages against Troy Franks only. Cole's claim of damages against Houser and McDonald was denied. Total liability for the accident, according to the arbitrator, rested with Troy Franks.

The $100,000 liability limits of the Franks policy were divided between the injured parties. Cole received $57,240. Based on the theory that he was entitled to at least the $100,000 limits of the policy, appellant continued his cross-complaint against Royal seeking the difference between what he received from the liability policy and the $100,000 he believed was available to him under the underinsured motorist provisions of the Franks policy and Insurance Code section 11580.2, subdivision (p)(2).

A court trial on Cole's cross-complaint took place on February 22, 1991. The parties filed trial briefs and entered into the following pertinent stipulations: the automobile policy issued to Franks had a single limit for liability of $100,000 and a single uninsured/underinsured limit of $100,000; the arbitrator found the sole cause of the accident to be Troy Franks's negligence and there was no negligence on the part of the tractor/trailer or any other party; the distribution of the $100,000 of liability coverage was proportional to the severity of the injuries received by each of the parties making a claim and was a good faith distribution; the arbitrator awarded damages in favor of Cole against Franks in the amount of $125,000 plus costs; and Cole was a passenger in the Franks vehicle and entitled to

underinsured motorist protection. This last stipulation was apparently made with an eye to the fact that appellant was entitled in a general sense to the protection of underinsured motorist coverage under the policy and the California Insurance Code.

No party requested a trial de novo and judgment was entered pursuant to the award. The parties submitted the matter to the trial court on these stipulated facts, their trial briefs and oral argument.

The trial court decided the case on April 9, 1991, entering judgment for Royal. The trial court found that Insurance Code section 11580.2, subdivision (p)(2) did not apply to this case and that the Franks automobile was not an underinsured vehicle under the meaning of that section. Notice of entry of judgment was mailed on May 22, 1991, and Cole filed a timely notice of appeal.

## DISCUSSION

■ Cole initially asserts that this case involves only the interpretation of Insurance Code[1] section 11580.2, subdivision (p)(2) defining the term "underinsured" motor vehicle.[2] Cole asserts there is no dispute as to the underlying facts and that the only issue to be resolved by this court is a question of law.

Cole's argument hinges on one clause in section 11580.2, subdivision (p)(2) which he believes is the key to the definition of an underinsured motor vehicle. Cole argues that the ultimate issue this court confronts is to interpret the clause "insured for an amount that is less than the uninsured motorist limits . . . of the injured person." Cole interprets this clause to mean that the amount of coverage actually available to an injured person is that amount that is available from the tortfeasor's policy regardless of the total policy limits in the insurance policy itself. Thus, if the amount ultimately available to an injured party under the liability limits is less than the underinsured limits of the policy because there are multiple victims claiming the proceeds,

---

[1]All statutory references are to the Insurance Code unless otherwise indicated.

[2]Section 11580.2, subdivision (p)(1) and (p)(2) provides as follows:

"(p) This subdivision applies only when bodily injury, as defined in subdivision (b), is caused by an underinsured motor vehicle. If the provisions of this subdivision conflict with subdivisions (a) through (o), the provisions of this subdivision shall prevail.

"(1) As used in this subdivision, 'an insured motor vehicle' is one that is insured under a motor vehicle liability policy, or automobile liability insurance policy, self-insured, or for which a cash deposit or bond has been posted to satisfy a financial responsibility law.

"(2) 'Underinsured motor vehicle' means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits carried on the motor vehicle of the injured person."

then the tortfeasor is underinsured with regard to that particular injured party. Given these circumstances Cole claims the underinsured motorist clause "kicks in" to supplement the liability policy to make the injured party whole.

Cole's contention misconstrues the intent of section 11580.2, subdivision (p)(2) and the case law interpreting that section. Preliminarily, we note that in setting up the clause to be interpreted, Cole quotes subdivision (p)(2) only in part. The entire section reads as follows: " 'Underinsured motor vehicle' means a motor vehicle that is an insured motor vehicle but insured for an amount that is less than the uninsured motorist limits *carried on the motor vehicle* of the injured person." (Italics added.) The plain meaning of this clause is simple. When a collision occurs between *two* (or more) motor vehicles and the insured is covered by an underinsured policy with limits in excess of the liability insurance limits provided by the other and tortfeasor motor vehicle, the underinsured motor vehicle is the tortfeasor vehicle which, though covered by liability insurance carries such liability insurance in an amount that is less than the underinsured motorist limits carried on the motor vehicle of the injured person. The statute necessarily assumes that there are two motor vehicles involved. It further assumes that the underinsured motor vehicle has liability coverage that is less than the underinsured coverage on the other motor vehicle which contained an injured party.

Under subdivision (p)(3) of the statute, underinsured coverage does not apply to any bodily injury until the limits of the bodily injury liability policy available "to all insured motor vehicles causing the injury have been exhausted by payment of judgments or settlements, and proof of the payment is submitted to the insurer providing the underinsured motorist coverage." In other words, subdivision (p)(3) requires that the tortfeasor's liability policy be exhausted before the injured motorist's underinsured policy comes into play.

Two recent cases are illustrative of and support this conclusion. The first is *Schwieterman* v. *Mercury Casualty Co.* (1991) 229 Cal.App.3d 1044 [280 Cal.Rptr. 804]. There, Schwieterman and several other individuals were injured in an automobile accident. They settled with the tortfeasor's insurance provider for the $30,000 policy limit of a $15/30,000 automobile policy. Such a policy pays a maximum of $15,000 per individual, per accident, but is limited to the $30,000 total benefits per accident. Schwieterman claimed that his $10,000 settlement was inadequate. He demanded underinsured benefits from Mercury, his own insurance provider. Mercury also insured the motorist who was responsible for causing the accident. Schwieterman claimed he was entitled to $5,000, which was the difference

between his $15,000 underinsured limits and his $10,000 settlement. (229 Cal.App.3d at p. 1046.)

The *Schwieterman* court found that subdivision (p)(2) of section 11580.2 defined an underinsured motor vehicle as one insured " 'for an amount that is *less than* [the victim's] uninsured motorist limits.' " Schwieterman maintained that the statute was designed and intended to provide benefits to those who would otherwise be uncompensated. (229 Cal.App.3d at p. 1046.) This is precisely the argument being made by appellant here. In both cases, the argument is that there is not only a pool of liability coverage funds available for each accident, but that where the tortfeasor causes injuries beyond the liability limits and there are multiple plaintiffs settling with that tortfeasor, those multiple plaintiffs have available the underinsurance benefits of the underinsured motorist coverage to supplement the tortfeasor's liability limits. This would, of course, increase the total pool of funds that are available from an accident.

The *Schwieterman* case noted that Schwieterman himself took advantage of the underinsured benefits but purchased only minimum $15,000/$30,000 coverage. Schwieterman then complained that his underinsurance motorist coverage was insufficient to fully compensate him for his injuries. The *Schwieterman* court noted that Schwieterman ignored the statutory language which specifically excludes underinsured coverage when the victims' underinsured limits are no greater than the tortfeasor's liability limits. The *Schwieterman* court also rejected the argument that section 11580.2, subdivision (p)(2) was ambiguous.

A more recent case presenting the issue is *State Farm Mut. Auto. Ins. Co. v. Messinger* (1991) 232 Cal.App.3d 508, 512 [283 Cal.Rptr. 493], wherein an accident occurred between two motorists. The injured parties, the Messingers, had a State Farm policy with uninsured/underinsured motorist coverage in the amount of $100,000 per person and $300,000 per accident. The tortfeasor Ballard, insured by Aetna, carried bodily injury liability coverage on his vehicle with an aggregate single limit of $300,000. The Messingers and a friend, Sehn, who was a passenger in the vehicle, made a claim against Ballard's policy. Aetna settled its claim with all the parties for the full amount of Ballard's policy limits—$300,000. Aetna, pursuant to agreement, paid $290,000 to Sehn and $5,000 each to the Messingers. The Messingers then filed suit against their insurance company, State Farm, claiming they had suffered damages in excess of their combined $10,000 settlement and that they were thus entitled to the underinsured motorist provision of their own policy. State Farm filed a declaratory relief action and was subsequently granted summary judgment. The Messingers appealed. (232 Cal.App.3d at pp. 512-513.)

The *Messinger* court noted that the meaning of the language of subdivision (p)(2) of section 11580.2 was not ambiguous. Underinsurance coverage did not apply unless the tortfeasor's vehicle was an underinsured motor vehicle. By definition, an underinsured motor vehicle was a vehicle insured for an amount that was *less than the uninsured/underinsured motorist limits carried by the injured person.* Therefore, if the tortfeasor was insured for an amount equal to or greater than the uninsured/underinsured limits of the injured person, that injured person would never collect any underinsurance coverage.

"The meaning of such words is clear. Underinsurance coverage does not apply unless the tortfeasor's vehicle is an underinsured motor vehicle. An underinsured motor vehicle, by definition, is a vehicle insured for an amount that is *less* than the uninsured/underinsured motorist limits carried by the injured person. Thus, if the tortfeasor is insured for an amount equal to or greater than the uninsured/underinsured limits of the injured person, that person never gets to collect any underinsurance coverage." (232 Cal.App.3d at p. 514.)

The *Messinger* court went on to note that Ballard was insured for a limit of $300,000 for all injuries arising out of an accident, and the Messingers had uninsured/underinsured limits of $100,000 for injuries to one person and $300,000 for all injuries arising out of the accident. Because their policy limits were each $300,000, the *Messinger* court concluded it to be "clear that Ballard's car was not an underinsured motor vehicle as defined by the Insurance Code and the Messingers' insurance policy. Ballard's car was insured for an amount *equal* to the uninsured/underinsured coverage the Messingers carried, and therefore not 'an amount *less* than the uninsured/ [underinsured] motorist limits carried' by the Messingers. (§ 11580.2, subd. (p)(2); italics added.) Accordingly, the Messingers' underinsurance coverage—drafted in language conforming to section 11580.2, subdivision (p)(2)—was never triggered and they were never entitled to collect *any* underinsurance amount from [their insured]." (232 Cal.App.3d at p. 514.)

The *Messinger* court analyzed the Messingers' argument on appeal and found that in essence they were arguing that when the last dollar was paid to them under the Ballard policy, the limits of liability on that policy became less than the limits of liability on their own policy and thus their own underinsurance coverage was triggered. (232 Cal.App.3d at p. 515.) The *Messinger* case reviewed authorities from sister jurisdictions, as well as analogous cases from California. (*Id.* at pp. 516-518.) The court noted that the statute and the language in the Messinger insurance policy were clear and unambiguous. (*Id.* at pp. 519-520.)

The *Messinger* court discussed the historical development and nature of underinsurance. We find the discussion informative.

"Underinsured motorist insurance developed as a result of the perceived inadequacies of uninsured motorist insurance. Many times victims would suffer substantial damages at the hands of a tortfeasor who, although insured, could not provide adequate compensation because of low liability limits. [Citation.] As a result, many states passed statutes making underinsurance coverage a mandatory part of motor vehicle insurance. Along the way, the various states had to choose to what extent they wanted to indemnify the insured for damages that went uncompensated by the tortfeasor. The distinctions are sometimes blurred from state to state but basically two general views of underinsurance coverage have developed. [Citation.]

"One view focuses on providing coverage to the accident victim for all damages that go uncompensated after the tortfeasor has paid over its limits. [Citation.] Termed 'broad coverage,' this view adopts the belief that underinsured motorist coverage is not merely a stop-gap measure to cure the deficiencies of existing uninsured schemes, but is intended to indemnify injured parties for uncompensated damages. [Citation.] The 'broad coverage' view defines a tortfeasor as underinsured whenever his available liability insurance proceeds are less than the injured party's actual damages. 'Broad Coverage' seeks to provide full indemnification. [Citation.]

"The second or 'narrow coverage' view focuses on placing the insured in the position he or she would have been in if the underinsured motorist had had liability coverage equal to the insured's underinsured motorist limits. Under this view, the purpose of underinsurance is only to fill the vacuum left by the traditional uninsured motorist coverage. This view denies any underinsurance coverage to the insured if the tortfeasor's liability limits are equal to or greater than the insured's underinsured coverage. [Citation.]" (232 Cal.App.3d at pp. 520-521, fns. omitted.)

The *Messinger* court correctly recognized that underinsurance coverage in California is not triggered by the amount of the injured person's damages or by the proceeds available to each injured person. Rather, underinsurance coverage is triggered by a comparison of the tortfeasor's bodily injury liability limits with the injured persons's underinsurance limits. Accordingly, *Messinger* concluded, California has chosen to follow the " 'narrow coverage' " view in enacting its underinsurance provisions. The central feature of California's underinsurance scheme is that it permits individuals to purchase insurance for themselves in an amount they deem appropriate. (232 Cal.App.3d at p. 521.)

With these policies in mind, the *Messinger* court concluded that "the focus of section 11580.2 is not on the amount of damages incurred or on the amount of damages uncompensated [after individuals are paid pursuant to the policies of tortfeasors]. Rather, section 11580.2 affords underinsurance coverage *only if the insured was injured by a driver with insurance limits lower than those the insured had chosen in contracting with his or her insurance company.*" (232 Cal.App.3d at p. 522, italics added.)

As Cole argues here, the Messingers argued that section 11580.2, subdivision (p) did not provide adequate coverage for accidents involving multiple victims. The *Messinger* court, however, believed that any criticism in this regard had to be directed to the Legislature. The *Messinger* court noted that under section 11580.2, subdivision (n), the Messingers could have chosen to increase their underinsurance limits so they would have been compensated in this unfortunate situation. (232 Cal.App.3d at pp. 513, fn. 1, 522.)

The factual difference between the instant case and *Messinger* is that in *Messinger* there were two insured vehicles, the tortfeasor vehicle with liability coverage and the injury vehicle with underinsured motorist coverage. In the instant case the tortfeasor vehicle and the injury vehicle are one and the same and a single insurance policy providing both liability and underinsured motorist coverage is involved.[3] By the express language of section 11580.2, subdivision (p)(2), underinsured coverage only comes into play where there is a collision between two vehicles and the tortfeasor's vehicle has less liability coverage than the underinsurance policy on the vehicle in which the injured party is present. It is only then that the underinsurance provisions of the injured party's policy come into play to supplement that party's insurance coverage and recovery.

Thus, for example, if a party with an uninsured/underinsured $300,000 policy is injured by a party with a $100,000 liability policy, the party with the $300,000 policy is entitled to $300,000 in coverage. The underinsured motorist provision is a way for the insurance policy holder to protect himself or herself from the negligence of other parties with less insurance.

The holdings of both the *Messinger* and the *Schwieterman* cases are in accord with this view. Both cases find that the purpose of section 11580.2, subdivision (p)(2) is not to increase the pool of insurance that is available to an injured policyholder merely because the policyholder cannot collect his or

---

[3]Apparently, the tractor/trailer rig that was involved in this accident but which was found not to be liable for any damages carried a policy with a limit per accident of $750,000, which is well in excess of the policy limits of the Franks vehicle. This has no bearing, however, on our analysis.

her actual damages from the liability coverage afforded by the tortfeasor's policy. Rather, the purpose of the underinsured motorist coverage is to add additional coverage to the injured insured when another, the tortfeasor, injures that party and has *less* coverage under his/her liability policy than the victim has under his/her policy for underinsured motorist coverage.

Here, unlike *Messinger*, there is only one applicable policy because the other vehicle was not negligent. Because the tractor/trailer caused no injuries and was not liable, that policy has no bearing on this case. No claim can be made against it so it does not enter the equation set up in section 11580.2, subdivision (p)(2). For purposes of our analysis, it is as though the Franks car veered into a "nonnegligent" brick wall in a "solo" accident.

Under this scenario, there can be no claim made pursuant to subdivision (p)(2) of section 11580.2 because this provision assumes that there is another negligent vehicle involved in the accident with liability insurance "less than the uninsured motorist limits carried on the motor vehicle of the injured person." Without separate vehicle policies, this section has no application at all.

The Franks liability policy cannot be considered "underinsurance" relative to its own underinsured motorist provisions. Such a construction is clearly contrary to the plain meaning of section 11580.2, subdivision (p)(2). In any case, the underinsurance limits of the Franks policy are identical to its own general liability limits. Even if we adopted a construction that permitted one to make a claim for underinsurance under one's own policy (because general liability was less than the underinsurance coverage), such construction would not apply here because the two coverages carry the same $100,000 limit.

At the heart of Cole's argument is the following statement: "The purpose [of] Uninsured/Underinsured Motorist coverage is to fill the gap between the amount available from the tortfeasor, and the amount of [under]insured motorist coverage, so as to make the victim whole." This is precisely the argument rejected by *Messinger*. (232 Cal.App.3d 508, 521-522.) Contrary to appellant's assertion, that is not the purpose of underinsurance coverage *except* when another vehicle driven by a tortfeasor carries liability insurance less than the victim's uninsured/underinsured limits.

The California underinsured motorist provisions require the occurrence and presence of certain specified contingencies not present in this case. Thus, we hold that where, as here, the injured party is a passenger in the vehicle of the sole tortfeasor, that injured party cannot recover from the

underinsured policy provisions of his driver's policy, as such insured vehicle is not an underinsured motor vehicle within the meaning of section 11580.2, subdivision (p)(2).

## DISPOSITION

The judgment is affirmed. Respondent to recover its costs on appeal.

Martin, Acting P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied April 29, 1993.