[No. G007306. Fourth Dist., Div. Three. Nov. 3, 1989.]

JO ANN MALONE, Plaintiff and Appellant, v.
NATIONWIDE MUTUAL INSURANCE COMPANY, Defendant
and Respondent.

COUNSEL

Nill, Hough & Johnston, Daniel L. Hough and Stephen C. Nill for Plaintiff and Appellant.

Parker, Stanbury, McGee, Babcock & Combs, Thomas Waddell and Michael E. McCabe for Defendant and Respondent.

OPINION

**CROSBY, J.**—We hold here that underinsured motorist coverage is not the equivalent of full excess coverage. As the statutory scheme is designed, the underinsured motorist carrier gets a dollar-for-dollar credit for all payments by third party tortfeasors to the insureds, whether the insureds are made whole or not. In other words, a carrier providing underinsured motorist benefits *never* pays the full amount, only the difference between the policy limits and all contributions by all tortfeasors to all insureds.

I

Jo Ann Malone's husband was struck by a car and killed as he changed a tire on a roadway. Plaintiff was in their truck at the time and witnessed his death. The driver was insured by a Teachers Insurance Company policy with limits of $100,000 per person and $300,000 per accident. Nationwide provided single limit underinsured motorist coverage for the Malone vehicle in the amount of $500,000. Malone's children assigned their rights as their father's heirs to her, and she recovered $100,000 from Teachers in wrongful death damages. Her husband's workers' compensation carrier paid an additional $17,528.87. Nationwide paid its $500,000 policy limits less the sums received by Malone, for a total of $382,471.13.[1]

At the time Nationwide paid the underinsured motorist obligation, Malone had not yet settled her own claim for emotional distress against the alleged tortfeasor. The release signed by Malone when she received the Nationwide disbursement acknowledged the parties' disagreement as to the

---

[1] Nationwide claimed a credit for the workers compensation benefits pursuant to Insurance Code section 11580.2, subdivision (h)(1). But that subdivision appears to apply only to uninsured motorist benefits. It provides in part, "Any loss payable under the terms of the *uninsured* motorist endorsement or coverage to or for any person may be reduced: [¶] (1) By the amount paid and the present value of all amounts payable to him or her [or] his or her . . . heirs . . . under any workers' compensation law . . . ." (Italics added.) Malone has not complained on this score, however, and we do not reach the propriety of this credit.

disposition of any settlement she might receive: Malone contended she would be entitled to keep the money because she had not made a claim against Nationwide for her own injuries. Relying on Insurance Code section 11580.2, subdivision (p), the carrier took the position that because it paid the policy limits less credits for sums already received, it would be entitled to any money Malone received from the alleged tortfeasor.

Malone settled her own emotional distress claim with Teachers for $100,000. Per the parties' agreement, she placed the funds in a trust account. She then initiated this declaratory relief action. Nationwide prevailed in the trial court.

## II

Insurance Code section 11580.2, subdivision (p)(4) provides a carrier's maximum exposure for underinsured benefits is the policy limits "less the amount paid to the insured by or for any person or organization that may be held legally liable for the injury." Subdivision (p)(5) adds, "The insurer paying a claim under this subdivision shall, to the extent of such payment, be entitled to reimbursement or credit in the amount received by the insured from the owner or operator of the underinsured motor vehicle or the insurer of such owner or operator." ▮ Malone argues she should keep the settlement from Teachers because she did not submit a claim for underinsured motorist benefits to Nationwide. But the insurer's right to reimbursement does not depend on the insured's submission of a claim; rather, it is pegged to the insured's receipt of funds from the "owner or operator of the underinsured motor vehicle or the insurer of such owner or operator." Here, Malone, in her capacity as heir to her husband's estate, received $100,000 from the alleged tortfeasor and an additional $100,000 for her own injuries from the same source. Nationwide agreed to pay Malone its policy limits for this accident; thus, it is entitled to be reimbursed for any sums she received from the party responsible for the damages she suffered, both in her capacity as heir to her husband's estate and in her own right.

The parties have not cited, and we have not found, any case law precisely on point. Malone relies primarily on opinions involving uninsured motorist coverage, but those cases are not entirely apt. The uninsured motorist coverage language (Ins. Code, § 11580.2, subd. (g)) is not identical to the underinsured motorist coverage provisions. (See, e.g., fn. 1, *ante*.) ▮ Also, the purposes of the two coverages are different: Uninsured motorist benefits are designed to provide minimum coverage to injured parties in the case of an accident. That the law contemplates those benefits may not make an injured party whole is evident by the antistacking rule in this state.

(See, e.g., Ins. Code, § 11580.2, subd. (d); *Wagner* v. *State Farm Mutual Auto. Ins. Co.* (1985) 40 Cal.3d 460 [220 Cal.Rptr. 659, 709 P.2d 462].)

The underinsured provisions, however, permit individuals to purchase insurance for themselves in an amount they deem appropriate. The premiums are presumably lower than for straight liability insurance or uninsured motorist benefits because the underinsured motorist risk necessarily contemplates that the party responsible for the injury will have coverage of its own in some amount. Take, for example, the case of an individual who suffers $2 million in damages in an accident and who has $1 million in uninsured and underinsured motorists benefits. If he is injured in an accident where the tortfeasor has no insurance coverage, his own uninsured benefits carrier will be liable for the $1 million policy limits. If the tortfeasor has coverage in an amount less than $1 million, the carrier is liable only for the difference between the $1 million limit and the amount paid by the tortfeasor's carrier. If the tortfeasor's coverage is in excess of $1 million but less than $2 million, the underinsured benefits carrier owes nothing to its injured insured. The analysis is no different if there is more than one tortfeasor or more than one injured insured. Per the statutory scheme, multiple contributions to multiple insureds are all credited against the underinsured exposure without regard to the actual damage unless that figure is less than the underinsured policy limit.

Malone makes much of the fact that Teachers paid two separate $100,000 claims. But the Teachers policy provided coverage of $100,000 per person or $300,000 per accident. With only two claimants, Teachers maximum exposure was $200,000; and Malone has apparently never contended she was eligible to tap the remaining $100,000. If the Teachers policy had provided single limit coverage which was exhausted in settling the wrongful death claim, she would not have been able to receive any sum for her own emotional distress damages.

Nationwide's coverage was of the single limit variety. Thus, regardless of the number of injured individuals, the maximum exposure for any one accident was $500,000, less the sums paid by the parties responsible for that accident. In this case, there was only one accident which resulted in two discrete injuries to Malone: one in her capacity as her husband's heir and one for her own emotional distress. ■■■ Once Nationwide paid the policy limits, it was entitled to be reimbursed for any sums *any* insured received from the tortfeasor. It matters not that separate injuries were suffered by Malone in different capacities, that the tortfeasor's payments were attributed to the separate injuries, or that she did not make a claim against Nationwide for one of the injuries. The losses were sustained in one accident, and Insurance Code section 11580.2, subdivision (p) mandates credit to the

underinsured benefits carrier for all sums paid to any insured by the responsible party or parties. If Malone had not been both her husband's sole heir and an injured party, presumably an apportioning of the underinsured benefits would have been appropriate. That is not the issue before us, however.

Judgment affirmed. Respondent is entitled to costs.

Scoville, P. J., and Staniforth, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.